2016 IL App (3d) 140205

Opinion filed April 15, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| PERU FEDERAL SAVINGS BANK, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff, | ) | La Salle County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| TINA WEIDEN, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Olivero and Olivero Law Offices, | ) | |
| | ) | Appeal No. 3-14-0205 |
| Defendant-Appellee; | ) | Circuit No. 12-CH-389 |
| | ) | |
| Donald Weiden, Jr.; Midland State Bank; | ) | |
| Successor to Amore Bank, N.A.; Collection | ) | |
| Professionals, Inc.; and Unknown Owners and | ) | |
| Nonrecord Claimants, | ) | |
| | ) | |
| Defendants). | ) | |

Honorable
Eugene P. Daugherity,
Judge, Presiding.

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice McDade concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendants, Donald and Tina Weiden, divorced in 2006. In 2012, plaintiff, Peru Federal Savings Bank, foreclosed on the martial residence. Olivero & Olivero Law Offices, the firm that represented Donald during the divorce, successfully requested that the surplus funds from the sale be awarded to it in satisfaction of a judgment lien for attorney fees. Tina appeals, claiming that she had priority based on the dissolution judgment and that her equitable lien should have been satisfied first. We reverse and remand with directions.

¶ 2        In August of 1998, Donald and Tina purchased the marital residence and executed a note and mortgage with plaintiff. In 2006, the trial court entered a judgment dissolving the Weiden's marriage. The court awarded Donald the marital residence and ordered him to pay Tina $34,380.40 for her equitable share in the property. A marital settlement agreement was incorporated into the judgment. Under its terms, Tina agreed to transfer her interest in the marital residence to Donald by executing a quitclaim deed, and Donald agreed to refinance the mortgage and pay Tina her award of $34,380.40. The agreement provided:

> "TINA shall transfer all ownership interest in and to the marital residence to DONALD by executing a Quit Claim Deed and any other necessary documents upon the refinance of the mortgage and note. Upon the refinance of the mortgage, DONALD shall pay the sum of $34,380.40 within sixty (60) days of the entry of the Judgment for Dissolution of Marriage for one-half of the equity in the residence."

The parties also agreed that they were responsible for their own attorney fees.

¶ 3        The law firm of Olivero & Olivero represented Donald during the divorce proceedings. Shortly after the dissolution judgment was entered, the firm obtained a memorandum of

judgment for $18,253 in attorney fees. Olivero & Olivero recorded the judgment with the county recorder on June 5, 2008.

¶ 4    In August of 2012, the bank filed a complaint for foreclosure against the marital residence. The Olivero law firm was named as a defendant pursuant to its recorded lien. Donald and Tina were also listed as defendants as the legal owners of the real estate.

¶ 5    Donald did not file an appearance or otherwise contest the proceedings. Tina filed her appearance on September 17, 2012. On October 4, 2012, Olivero & Olivero filed an answer to the complaint for foreclosure and asserted its lien against the property. On February 13, 2013, the trial court granted the bank's motion for summary judgment and entered a judgment of foreclosure.

¶ 6    Three months later, the sheriff conducted a judicial sale, and the property was sold. The winning bid was $35,909.88 more than the amount Donald and Tina owed to Peru Federal. Shortly after the sale, the bank filed a motion for approval and set a hearing on distribution of the excess funds, stating that Olivero & Olivero was a recorded lienholder.

¶ 7    On October 30, 2013, Olivero & Olivero filed a motion for summary judgment on its lien and a petition for fees. In response to the firm's motion, Tina filed an answer to the petition and a cross-petition for distribution, alleging that she had a lien against the property and that her lien had priority over all other liens.

¶ 8    Following a hearing, the trial court denied Tina's claim of an equitable lien and found that Olivero & Olivero had a valid judgment lien against the property that had been perfected. The court then determined that the firm should be paid first from the surplus of the sale and that any remaining funds should be shared by Donald and Tina as joint owners in equity.

¶ 9                                    ANALYSIS

¶ 10     On appeal, Tina claims that the trial court erred in awarding the surplus proceeds to Donald's law firm. She argues that the dissolution judgment awarding her $34,380.40 as her equitable share in the marital residence created an equitable lien on the property that has priority over the judgment lien recorded by Olivero & Olivero.

¶ 11     Under Illinois law, the proceeds resulting from the sale of real estate under foreclosure shall be applied as follows: (1) the reasonable expenses of the sale; (2) the reasonable expenses of securing possession before the sale; (3) satisfaction of claims in the order of priority adjudicated in the judgment of foreclosure or order confirming the sale; and (4) remittance of any surplus to the appropriate parties, as ordered by the court. 735 ILCS 5/15-1512 (West 2012). Generally, satisfaction of claims in the order of priority is determined by debts, or liens, that have been properly recorded. See *Heritage Federal Credit Union v. Giampa*, 251 Ill. App. 3d 237, 238-39 (1993). A judgment lien is created when a certified copy of a judgment is filed in the office of the county recorder on the real estate of the person against whom it is entered. 735 ILCS 5/12-101 (West 2012) (a judgment is a lien only from the time a transcript, certified copy or memorandum of judgment is filed in the office of the recorder in the county in which the real estate is located).

¶ 12     Also, equitable liens may be imposed on real property out of considerations of fairness. *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260, 270-71 (1985). The essential elements of an equitable lien are: (1) a debt, duty or obligation owing by one person to another; and (2) a *res* to which that obligation attaches. *Uptown National Bank of Chicago v. Stramer*, 218 Ill. App. 3d 905, 907 (1991). Such liens have been imposed where contracts manifest the intent that a particular property or funds be security for a debt whenever there has been a promise to convey or assign the property as security. *Id*. at 907-08. While

4

express words are not required to create an equitable lien, "it must clearly appear from the instrument or the surrounding circumstances \*\*\* that the maker of the instrument intended that the property therein described is to be held, given, or transferred as security for the obligation." *Hibernian Banking Ass'n v. Davis*, 295 Ill. 537, 544 (1920).

¶ 13 In this case, we find that the dissolution judgment created an equitable lien in Tina's interest in the marital property. The dissolution judgment awarded Donald the marital residence. In exchange for her interest in the marital property, Tina agreed to execute a quitclaim deed giving her interest in the property to Donald, and Donald agreed to refinance the mortgage and use those funds to pay Tina. The specific language of the dissolution judgment clearly indicated that the martial residence was the security for Tina's equity interest. Upon refinance of the mortgage and note, Donald would receive the money necessary to buy Tina's interest in the property, and when Tina received her money, she would execute a quitclaim deed releasing her interest in the property. Thus, it is apparent from the judgment and the surrounding circumstances that the parties intended that the property would be "held \*\*\* as security for the obligation." See *Hibernian Banking*, 295 Ill. at 544. The dissolution judgment therefore created an equitable lien that has priority over the judgment lien recorded by Olivero & Olivero. On remand, Tina should be awarded the excess surplus first and any remaining funds should be used to satisfy the law firm's lien.

¶ 14 CONCLUSION

¶ 15 The judgment of the circuit court of La Salle County is reversed. The cause is remanded to the trial court to redistribute the surplus proceeds as directed.

¶ 16 Reversed and remanded with directions.

5